UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61102-CIV-ALTMAN/Hunt

EMPIRE FIRE AND MARINE
INSURANCE COMPANY,

    *Plaintiff*,

v.

KIVEN LASHAWN SPAN, *et al.*,

    *Defendants*.
_____/

# ORDER

    This is an insurance dispute over a car crash. In 2018, Kiven Lashawn Span crashed into a car that then rear-ended Patricia Charles, Francoise Dubois, Patrick Simonis, and Antonine Leveque. Having suffered severe injuries, the crash victims (Charles, Dubois, Simonis, and Leveque) sued Span in state court. In this separate (federal) action, Span's insurer, Empire Fire and Marine Insurance Company, asks the Court to declare that it has no duty to defend or indemnify Span in the underlying state-court lawsuit. After some tortuous litigation and several rounds of motions practice, Empire Fire has filed its Second Renewed Motion for Summary Judgment [ECF No. 118] (the "Motion").

    In its Motion, Empire Fire contends that, when he crashed, Span was driving drunk—a fact Empire Fire views as dispositive because its policy precludes coverage for impaired drivers. But there are two fundamental problems with Empire Fire's position. *First*, the duty to defend is generally governed solely by the allegations in the underlying complaint, and our state-court complaint says *nothing* about alcohol or drunk driving. *Second*, the duty to indemnify is, as this Court has already held, not yet ripe. Because the state court has entered no judgment, there's simply nothing for Empire Fire

to indemnify. For these reasons, the Motion is **DENIED**.[1]

## THE FACTS

**A.     The Crash**

On February 8, 2018, Span rented a car from Enterprise Rent-A-Car. *See* Plaintiff's Statement of Undisputed Facts [ECF No. 107] ("Plaintiff's SOF") ¶ 6. The next day, while driving the car, Span rear-ended one car that, in turn, rear-ended another car occupied by our crash victims. *Id.* ¶ 2. Responding to the scene, an investigating police officer concluded that Span was intoxicated. *Id.* ¶ 3. The officer based this conclusion on several indicators, including: (1) Span was asleep in his car when the officer arrived; (2) Span's eyes were watery and bloodshot; (3) Span's breath smelled of alcohol; and (4) Span failed the roadside sobriety test. *Id.* ¶ 4. At the same time, Span—who had just been in a serious car crash—never took a breathalyzer test and never provided a blood sample. *See* Opposition to Motion for Summary Judgment [ECF No. 121] ("Opposition") at 6.

**B.     The Underlying Complaint**

On March 11, 2019, the crash victims sued in Florida state court, asserting a single count of negligence against Span. *See* Complaint, *Charles v. Span*, No. CA CE19005429 (Fla. Super. Ct. Mar. 11, 2019), ¶¶ 11–14. That count alleges that Span crashed into the state-court plaintiffs when he "carelessly and negligently operated" his car, causing "significant and severe bodily injury." *Id.* ¶¶ 13–14. The complaint never says that Span had consumed alcohol or that he was impaired or intoxicated in any way. *Id.* ¶¶ 1–24. In fact, the complaint never even *hints* at the possibility. Instead, the state-court plaintiffs only (generally) allege that Span drove negligently. *Id.*

**C.     The Insurance Policy**

Because Span had no personal auto insurance, he elected to pay for optional coverage when

---

[1] The Motion is ripe for resolution. *See* Opposition [ECF No. 121]; Reply [ECF No. 124].

he rented his car from Enterprise. *See* Opposition at 2. Through Empire Fire, Span purchased a "Supplemental Liability Protection" policy (the "Policy"). *See* Plaintiff's SOF ¶ 18.[2] The Policy has a $1 million limit and (broadly) covers any "'loss' involving 'bodily injury' . . . caused by an 'accident.'" Policy [ECF No. 1-2] at 2, 6. This coverage is subject to several policy exclusions. *Id.* at 7–8. The Policy, for example, excludes coverage *both* for any loss arising from an accident that occurs while the renter is under the influence *and* for any loss that occurs when the car is used in violation of the Enterprise rental agreement. To quote from the Policy:

> [T]his insurance does not apply to the following:
>
> 1. Loss arising out of an "accident" which occurs while the "insured" is under the influence of alcohol or drugs, or other substances unless prescribed by a physician.
>
> 2. Loss arising out of the use of a "rental vehicle" when such use is in violation of the terms and conditions of the "rental agreement."

*Id.* at 7; *see also* Plaintiff's SOF ¶ 19. The rental agreement, in turn, prohibits the renter from using the car in any illegal or reckless manner or from driving the car while under the influence of drugs or alcohol. It says (in relevant part):

> **4. Limits on Use and Termination of Right to Use.**
>
> a. Renter agrees to the following limits on use: . . .
>
> (4) Vehicle should not be used for: any illegal purposes; in any illegal or reckless manner; in a race or speed contest; or to tow or push anything[;] . . .

---

[2] The parties quibble over whether Span agreed to either the rental agreement or the Policy. As the Defendants note, the rental agreement identifies the renter as "KIVEN STAN," not "KIVEN SPAN"—an incongruity the Defendants attribute, not to a typo, but to the near-miraculous appearance of a Kiven Stan, who (by striking coincidence) walked into the very same Enterprise on the very same day and rented the very same car as Kiven Span. *See* Opposition at 4–5 (disputing "whether Kiven SPAN (not 'STAN' as is evidenced in the agreement) ever received the Rental Agreement Jacket, the Rental Agreement, and agreed to either terms prior to renting the vehicle"). Empire Fire, for its part, maintains that it was Span who signed the rental agreement that day—a far more plausible inference. *See* Reply ("Defendants' focus on an apparent misspelling in the Rental Agreement is nothing more than a red herring."). Fortunately, because we resolve the Motion on other grounds, we needn't disentangle this mystery. So (for now anyway), we'll just assume that Span agreed to the rental agreement's terms.

3

>   (7) Vehicle shall not be driven by any person impaired by the use of narcotics, alcohol, intoxicants, or drugs, used with or without a prescription.

*Id.* ¶ 17; *see also* Rental Agreement Jacket [ECF No. 107-3] ¶ 4. In short, Span agreed that he would not use his rental car (1) while he was "under the influence of alcohol or drugs, or other substances unless prescribed"; (2) while he was "impaired by the use of narcotics, alcohol, intoxicants, or drugs, used with or without a prescription"; or (3) "in any illegal or reckless manner." Plaintiff's SOF ¶¶ 17, 19.

### D.  This Case

Empire Fire filed this lawsuit on May 1, 2019, a few short months after the crash victims sued Span in state court. *See generally* Docket. In response to Empire Fire's First Renewed Motion for Summary Judgment [ECF No. 106], this Court stayed Empire Fire's duty-to-indemnify claim because, without a state-court judgment against Span, that claim isn't yet ripe. As the Court explained: "If there has been no judgment, then there is no duty-to-indemnify claim, it's not yet ripe. I don't have Article III jurisdiction over that claim." Transcript [ECF No. 120] at 6:6–8; *see also* Order [ECF No. 112] (staying the duty-to-indemnify claim). But the Court allowed Empire Fire to file a second renewed motion for summary judgment as to its (alleged) duty to defend. *Id.* This is that Motion.

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Id.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, then, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir.1994))).

## ANALYSIS

### A.     The Duty to Defend

Empire Fire has failed to establish that it has no duty to defend Span in the state-court case. Under Florida law, courts "generally look only to the four corners of a complaint to determine an insurer's duty to defend." *Mid-Continent Cas. Co. v. Arpin & Sons, LLC*, 824 F. App'x 644, 649 (11th Cir. 2020); *see also State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (noting that the duty to defend is generally "determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured"). And an insurer's duty to defend is triggered when the complaint against its insured "fairly bring[s] the case within the scope of coverage." *Princeton Excess & Surplus Lines Ins. Co. v. Hub City Enterprises, Inc.*, 808 F. App'x 705, 708 (11th Cir. 2020) (cleaned up).

"If the complaint alleges facts that bring the injury within the policy's coverage, the insurer must defend as a matter of law, 'regardless of the merits of the lawsuit.'" *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.*, 721 F. App'x 847, 854 (11th Cir. 2017) (quoting *Steinberg*, 393 F.3d at 1230). That is, "the duty to defend attaches 'even if the allegations in the complaint are factually incorrect or meritless.'" *Id.* (quoting *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005)). Indeed, "[w]hen the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." *Jones*, 908 So. 2d at 443 (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985)). "If there is any doubt about the insurer's duty to defend, then the ambiguity must be resolved in favor of the insured." *Princeton Excess*, 808 F. App'x at 708.

These principles easily dictate the result in our case. The Policy provides coverage for any loss involving bodily injury arising from an accident. *See* Policy at 6. And an accident is exactly what the underlying complaint alleges happened here: that Span negligently crashed into the state-court

6

plaintiffs, causing their injuries. *See* Complaint, *Charles v. Span*, No. CA CE19005429, ¶¶ 11–14. While the Policy excludes coverage in cases where the negligent driver is under the influence of drugs or alcohol (or where the driver uses the vehicle illegally or recklessly), *see* Plaintiff's SOF ¶¶ 17, 19, the underlying state-court complaint never suggests that Span was drunk or intoxicated in any way. The underlying complaint, in fact, says *only* that Span "carelessly and negligently" caused the crash—a carelessness that's perfectly consistent with any number of negligent (but sober) acts. So, for instance, Span might have fallen asleep at the wheel, he might have been lost in thought, he might have been texting and driving (or reading and driving), or he might have been driving blindfolded. Either way, the complaint alleges nothing from which this Court might reasonably infer that Span was drunk when he crashed into the state-court plaintiffs.

Florida, to be sure, has recognized two *narrow* exceptions to the four-corners rule—neither applicable here.

*First*, under Florida law, courts may look to extrinsic evidence (*i.e.*, evidence outside the underlying complaint) "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint." *Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5, 10 (Fla. 2004). This makes sense: a plaintiff is unlikely to include in his state-court negligence suit allegations about (for instance) whether the state-court defendant properly notified its insurer; whether the defendant is an insured under the policy; or whether the defendant had knowledge of a claim against it *before* it bought coverage.[3] In these scenarios, of course, courts will

---

[3] *See Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 866 (11th Cir. 2014) (relying on the "uncontroverted date of written notice when determining its duty to defend because the date of written notice to the insurance company is not a fact that would normally be alleged in the complaint"); *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1028 (Fla. 3d DCA 1989) (relying on extrinsic evidence that left "no room for doubt" that the defendant was *not* an insured); *Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, 172 F. Supp. 3d 1326, 1340 (M.D. Fla. 2016) ("It appears that application of a prior knowledge exclusion may constitute a circumstance where consideration of extrinsic evidence is appropriate.").

need to look beyond the underlying complaint.[4]

But this exception has absolutely nothing to do with our case. Unlike the sort of allegation a plaintiff would have no reason to add to its state-court complaint—like whether the defendant properly notified its insurer of a potential claim—the crucial fact in question here (that Span was drunk when he crashed into the plaintiffs) is *precisely* the kind of allegation that *would* be included in that complaint. *See generally Mt. Hawley Ins. Co. v. Tactic Sec. Enf't, Inc.*, 2017 WL 8316925, at *6 (M.D. Fla. Sept. 28, 2017) ("*Higgins* stands for a limited exception where an insurer's denial of the duty to defend is based on only those factual issues that *would not normally* be alleged; it is not a holding that allows for denial based on *any and all* facts that were not alleged, nor facts that are contrary to facts that are alleged."), *report and recommendation adopted*, 2017 WL 6947453 (M.D. Fla. Nov. 15, 2017). Empire Fire thus cannot avail itself of this first exception here.

*Second*, Florida courts have found "that in special circumstances, a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014). The Eleventh Circuit has cautioned, however, that "such cases are best viewed 'as exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage.'" *Id.* at 1323–24 (quoting *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 Fed. App'x 777, 786 (11th Cir. 2008)). This second exception, in short, aims to prevent plaintiffs from "omitt[ing] a 'crucial, undisputed fact in a

---

[4] *See generally* 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 17.01 (2021) ("Some courts have held that an insurer may properly base a refusal to defend on extrinsic facts that relate solely to an issue of coverage, provided that the facts have no relation to any disputed issue of liability in the underlying action. Examples of coverage issues for which the insurer may be able to base a denial to defend on extrinsic facts include: Nonpayment of a premium; Cancellation of a policy; Failure to cooperate or lack of timely notice; Whether the person sued has been specifically excluded by name or description from any coverage; Whether the property involved in the suit is included in or has been expressly excluded from any coverage; and Nonexistence of the policy.").

patent attempt to plead into coverage.'" *BBG Design Build, LLC v. S. Owners Ins. Co.*, 820 F. App'x 962, 965 (11th Cir. 2020) (quoting *Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp.*, 469 F. Supp. 2d 1214, 1220 (S.D. Fla. 2006)).

This exception likewise doesn't apply to our case. For starters, the "fact" that Span was intoxicated at the time of the collision is not at all *undisputed*. Indeed, in a section of their brief entitled "Defendant[s] [d]ispute[] Span was intoxicated," the Defendants very much dispute that Span was intoxicated. *See* Opposition at 5–6. And, for all the reasons set out in that section, Span's alleged intoxication isn't *obvious to all*. So, for instance, as the Defendants point out, even though Span "had just been involved in a serious collision," there is "no concrete evidence that there was an intoxicant in Mr. Span's system." *Id.* at 6. Span, after all, didn't take a breathalyzer test or provide a urine or blood sample. *Id.* And Empire Fire has presented no judicial finding that Span was intoxicated. Nor has Empire Fire produced any evidence of gamesmanship—*i.e.*, any evidence that the state-court plaintiffs *purposefully* omitted Span's drunkenness from the state-court complaint as a way of pleading themselves into coverage. This (very limited) exception, then, is inapposite here.[5]

This result is consistent with fundamental principles of federalism and with the caution we generally employ when we risk encroaching on the traditional role of the jury. As we've said, the underlying case is still pending before a state court. The principal dispute in that case will (almost undoubtedly) revolve around this question—namely, whether Span was drunk when he crashed into the state-court plaintiffs. For the Court to find now—without hearing any testimony—that Span's

---

[5] One more thing: Although Empire Fire references the "manifestly obvious to all" exception in passing, it never *actually* contends that the exception applies. It relies, instead, *only* on the "undisputed" exception, arguing that "the undisputed evidence establishes that . . . Span was intoxicated at the time of the accident." Motion at 8–9. Empire Fire has thus waived any argument it could have advanced under the "manifestly obvious to all" exception. *See, e.g.*, *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

drunkenness is "undisputed" or "manifestly obvious to all" would thus constitute a gross (not to mention uninformed) infringement on the sovereignty of the state. *See, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975) (noting that federalism is concerned primarily with "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways" (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)); *see also Ex parte Young*, 209 U.S. 123, 162 (1908) ("But the Federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court.").[6] No less problematically, to decide that question here—particularly on cold papers and without the benefit of cross-examination—would be to intrude on the province of the jury, hallowed ground on which we should not blithely tread. *Cf.* THE FEDERALIST No. 83 (Alexander Hamilton) ("The friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury. . . : the former regard it as a valuable safeguard to liberty; the latter represent it as the very palladium of free government.").

In any event, our decision today fits neatly within the strong current of recent decisions that have refused to extend the narrow scope of Florida's "undisputed" and "manifestly obvious to all" exception. *See, e.g., Orange & Blue Constr., Inc. v. HDI Glob. Specialty SE*, 2020 WL 6343327, at *6 (S.D. Fla. Aug. 25, 2020) (declining to consider extrinsic evidence because the application of a policy exclusion for independent contractors wasn't "obvious"); *Mt. Hawley Ins. Co. v. Roebuck*, 383 F. Supp. 3d 1351, 1365 (S.D. Fla. 2019) (refusing to consider extrinsic evidence because the parties "hotly dispute[d]" the facts that supported application of a policy exclusion), *aff'd*, 797 F. App'x 518 (11th

---

[6] Worse, passing on this question now—while the state case is pending—may lead to inconsistent results. The Court, after all, may find it "manifestly obvious to all" that Span *was* intoxicated only for a state jury to find that he was *not*.

Cir. 2020); *S.-Owners Ins. Co. v. Wentworth Constr. Co., LLC*, 2019 WL 8275154, at *8 (S.D. Fla. Dec. 10, 2019) (concluding that, because the facts "are not undisputed and do not seem to be of the sort intentionally omitted from the underlying complaint, the Court is unpersuaded that this is an extraordinary case that requires the Court to look beyond the [four] corners"); *GEICO Indem. Ins. Co. v. Silva*, 2017 WL 5634717, at *5 (S.D. Fla. Jan. 4, 2017) (rejecting the insurer's request to rely on extrinsic evidence to support insurer's view that the relevant act was intentional—and so, not covered—because the evidence suggesting "intentional[] rather than negligent[]" conduct was "not 'undisputed'"); *Advanced Sys., Inc. v. Gotham Ins. Co.*, 272 So. 3d 523, 528 (Fla. 3d DCA 2019) (refusing to consider extrinsic evidence the insurer proffered in its effort to show that a pollution exclusion applied because the insured "consistently contested the nature and composition of the released fire suppression foam").

Against all this, Empire Fire relies almost entirely on two decisions—both unavailing. We'll start with *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101 (Fla. 4th DCA 1995). In that case, before the suit was filed, "the insured conceded to his carrier that on the occasion in question he operated [a] water craft with a 40-hp engine"—a concession that (indisputably) "place[d] any claim arising from the occurrence outside the coverage afforded by the policy." *Id.* at 1102. The court found that, in the underlying suit, the claimant had purposefully omitted any mention of the engine's horsepower in an obvious "attempt to bar any consideration of the evidence showing that the engine was not covered." *Id.* at 1103. Given these facts, the court concluded that, "if uncontroverted evidence places the claim outside of coverage, . . .we think the carrier is relieved of defending." *Id.* Our case, of course, is very different: Neither Span nor the crash victims has ever admitted that Span was driving drunk. To the contrary, from the beginning of this litigation, the question of Span's intoxication has been very much disputed. And, as we've said, there's absolutely no evidence that the crash victims omitted Span's (alleged) drunkenness from the underlying complaint as part of some clever stratagem. *Keen* thus

11

doesn't control us here.

Empire Fire's reliance on *Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F. Supp. 2d 1142 (M.D. Fla. 2005), fares no better. In that case, the insurer sought a declaration that it had no duty to defend or indemnify a person who was injured on the insured's tractor. *Id.* at 1144. The policy had a cross-liability exclusion that eliminated coverage for claims brought by one insured against another. *Id.* As to the duty to defend—the duty at issue here—the court looked *only* to the allegations of the underlying state-court complaint. *Id.* at 1146. And, finding no indication that the victim was also an insured, the court held that the insurer *had a duty* to defend. *Id.* But the court absolved the insurer of its *duty to indemnify* after concluding, by reviewing the extrinsic evidence, that the victim was also an insured. *Id.* at 1150. The court thus granted summary judgment on both the duty to indemnify and the duty to defend, reasoning that "the duty to defend ceases when it is shown that there is no potential for coverage, i.e., when there is no duty to indemnify." *Id.* at 1146, 1150–51.

As should be clear already, *STD Enterprises* is inapplicable for two reasons. *First*, in that case—unlike ours—the extrinsic evidence (the victim's deposition testimony) *was* undisputed. *See id.* (noting that the insured "does not offer any evidence contradicting [the victim's] testimony, therefore none of the facts presented in his testimony are disputed"). We have no similar admission from Span (or anyone else), and—more importantly—the Defendants *do* dispute the evidence of Span's intoxication. *See 633 Partners*, 300 F. App'x at 786 (distinguishing *STD Enterprises* on the ground that, in that case, "[n]either party disputed this fact [that the employee was an insured], and the employee's deposition testimony clearly supported its veracity"). *Second*, as Empire Fire concedes, *see* Motion at 7 & n.1, *STD Enterprises* held that, because the insurer had no duty to indemnify, it could bear no duty to defend. But "[t]he *STD Enterprises* court did not address the ripeness of the duty to indemnify claim." *Great Am. Assurance Co. v. Walters*, 2015 WL 13567713, at *2 (M.D. Fla. Oct. 7, 2015). Since our duty-to-indemnify claim (by contrast) is not yet ripe, we cannot opine on its viability and, as such, cannot use

it to resolve Empire Fire's separate duty-to-defend claim.

In sum, Empire Fire's request for summary judgment on its duty-to-defend claim is **DENIED**.

### B. The Duty to Indemnify

As we've foreshadowed, Empire Fire's duty-to-indemnify claim isn't yet ripe. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (cleaned up). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997); *see also Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) ("Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes.").

Applying these principles, the Eleventh Circuit has repeatedly found that the "duty to indemnify [an insured] is not ripe for adjudication until the underlying lawsuit is resolved." *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019); *see also J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 n.4 (11th Cir. 2014) ("The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims."); *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 810 (11th Cir. 2013) (holding that the "district court correctly declined to consider [the duty to indemnify] claim because it was premature and did not constitute a present case or controversy"). Indeed, this Court, relying on those decisions, has reached the same conclusion. *See Dream Builders of S. Fla. Corp. v. Mid-Continent Cas. Co.*, 2019 WL 3821552, at *4 (S.D. Fla. Aug. 15, 2019) (Altman, J.) (noting that "the duty to indemnify does not ripen until the state-court plaintiff has obtained a favorable judgment").

These decisions rely on two important principles. *First*, when a federal judge adjudicates a duty-to-indemnify claim *before* there's been a judgment or settlement in state court, that judge is opining "on a matter which might never arise," and it is emphatically *not* our role to address "nice and intriguing questions which . . . may never in fact come to pass." *Am. Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960). *Second*, "in the development of the substantive causes of action . . . , evidence might be relevant and adduced which has a decisive bearing on the [application of the] policies." *Id.* In other words, the duty to indemnify hinges, at least in part, on "the underlying facts adduced *at trial*." *Stephens*, 749 F.3d at 1324 (emphasis added) (quoting *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. 4th DCA 2006)). And it would be unfair—if not imprudent—to resolve the fact-intensive question of indemnification *before* the record in the underlying state-court suit is fully developed.

Here, for instance, the crash victims' state-court case against Span is ongoing. That case may result in a finding that Span isn't liable—in which case Empire Fire's (hypothetical) duty to indemnify would never arise. Even if Span were found liable, however, Empire Fire would still have a chance to show that, by virtue of certain facts adduced in the state-court case, Span is excluded from the Policy's coverage. Or that trial may show that Span's accident had *nothing* to do with drunkenness and that the crash victims' claims *are* governed by the Policy. Either way, under well-settled law from this Circuit, Empire Fire's duty to indemnify is not properly before us. *See, e.g.*, *Orange & Blue*, 2020 WL 6343327, at *7 ("The duty to indemnify issue will only become ripe to adjudicate upon resolution of the underlying action."); *AIX Specialty Ins. Co. v. Dginguerian*, 2019 WL 4573255, at *3 (S.D. Fla. Sept. 20, 2019) (Altonaga, J.) ("[T]he duty to indemnify is not ripe for adjudication until the underlying lawsuit is resolved." (cleaned up)).[7]

---

[7] The Eleventh Circuit has said that one possible "exception to the ripeness rule applies when 'the court can determine that the allegations in the complaint could under no circumstances lead to a

Empire Fire's request for summary judgment on its duty-to-indemnify claim is thus likewise **DENIED**.

\*\*\*

After careful review, the Court hereby **ORDERS** and **ADJUDGES** that the Plaintiff's Second Renewed Motion for Summary Judgment [ECF No. 118] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 2nd day of June 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

result which would trigger the duty to indemnify.'" *Delacruz Drywall*, 766 F. App'x at 771 (quoting *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001)). The Eleventh Circuit, however, added that *Northland*'s "under no circumstances" exception (1) "is not binding on this court"; (2) would *permit* the court to reach the duty to indemnify, but "would not *compel* the district court to assess [the insurer's] duty to indemnify at this time"; and (3) has been applied only when a court finds no *duty to defend* and, on that basis, must find no duty to indemnify. *Id.*

As a preliminary matter, Empire Fire never suggests that this exception applies here, so it's waived any such argument. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). But, even if this exception did apply—and, for the three reasons outlined in *Mid-Continent*, it doesn't—there's no basis to say that the crash victims' complaint could, "under no circumstances," trigger Empire Fire's duty to indemnify. Again, whether Span was drunk when he crashed into the state-court plaintiffs is a hotly disputed question of fact about which this Court cannot (and does not), on a cold record, express any opinion.